# WOODS LONERGAN PLLC

### ATTORNEYS AT LAW

woodslaw.com

One Grand Central Place
60 East 42nd St., Suite 1410
New York, NY 10165
Tel: 212 684 2500
Fax: 212 684 2512

James F. Woods, Esq.
jwoods@woodslaw.com

Lawrence Lonergan, Esq.
llonergan@woodslaw.com

Annie E. Causey, Esq.
acausey@woodslaw.com

**THY Defendants shall file any motion to dismiss, with a memorandum of law, by October 6, 2023. Plaintiff shall file any opposition by October 27, 2023. THY Defendants shall file any reply by November 7, 2023. The parties shall comply with the Court's Individual Rules in filing their motion and supporting papers. THY Defendants' request to deny discovery to Plaintiff is DENIED. So Ordered.**

**The Clerk of Court is respectfully directed to close the motion at Dkt. 32.**

**Dated: September 15, 2023
New York, New York**

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

Via ECF
Hon. Lorna G. Schofield, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   NuAxess 2 Inc. v. Turkish Airlines Inc. et al.
      Case No.: 23-cv-03137-LGS

Dear Judge Schofield:

This firm represents Plaintiff NuAxess 2 Inc. ("Plaintiff") in the above-referenced action ("Action"). We submit this response letter to the pre-motion letter of Defendants Turkish Airlines, Inc. ("Turkish") and Türk Hava Yollari Anonim Ortakligi ("THY") (together, "THY Defendants") for a conference concerning Defendants' proposed Rule 12(b)(6) motion to dismiss the Second Amended Complaint ("SAC") ("Motion").

"The *Twombly* plausibility standard *[]* does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, *see, e.g., Boykin v. KeyCorp,* 521 F.3d 202, 215 (2d Cir.2008), or where the belief is based on factual information that makes the inference of culpability plausible, *see Iqbal,* 129 S.Ct. at 1949 ('A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged')" (*Arista Records, LLC v. Doe 3*, 604 F3d 110, 120 (2d Cir. 2010)). "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality" (*id.*), "even if it strikes a savvy judge that actual proof of those facts is improbable" (*Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018)).

Plaintiff does not have in its possession a copy of a written agreement between NuAxess and THY governing the NuAxess Health Plan ("NHP") service. It is the pattern and practice of NuAxess to only sign a customer such as the THY Defendants to the NHP <u>after</u> the customer and NuAxess have signed a written co-employment agreement, referred to as a "Staffing Agreement." As a

# WOODS LONERGAN PLLC

ATTORNEYS AT LAW

result of the absence from NuAxess's records of a signed written Staffing Agreement, the SAC can only plead "upon information and belief" that the THY Defendants entered into an agreement with Plaintiff.

The following facts are based on documents establishing that: (i) approximately 210 individuals associated as employees with the THY Defendants were signed to the NHP; (ii) those individuals received medical services which were billed to NuAxess under the NHP in the amount of $1,318,181.89 and the third-party NHP administration costs billed in the amount of $585,637.21; (iii) NuAxess paid $1,318,181.89 in over 3,500 medical benefit claims received for medical services provided to THY Defendants' employees between September 2020 and March 2021 as well as all NHP third-party administration costs in the amount of $585,637.21; (iv) NuAxess invoiced the THY Defendants a total of $1,428,626.47 between September 2020 through March 2021 for premium payments due under the NHP ("Invoices"); and (v) NuAxess's accounting records indicate that no payment of any portion of the due premium payments was received from any payor.

Based on these facts, it is plausible to infer the existence of an agreement between the THY Defendants and NuAxess pertaining to the NHP that the THY Defendants breached by failing to remit payment for the NHP service to the provider of that service - Plaintiff. If discovery ultimately indicates no agreement existed, then these allegations support the SAC's quasi-contract claims. On the other hand, whether the THY Defendants' alleged payments to Defendant InsurZoom.com Brokerage Inc. ("InsurZoom") satisfied the THY Defendants' payment obligations to NuAxess under the NHP as reflected in the Invoices cannot be conclusively determined as a matter of law on the anticipated Rule 12(b)(6) Motion.

Plaintiff would not have sent the Invoices addressed to THY to InsurZoom unless there was a prior representation from the THY Defendants to do so; it strains common sense and plausibility to maintain otherwise. Discovery will yield relevant email correspondence between the THY Defendants and Plaintiff's prior agent Rob Rossiter that will support this claim presently made on information and belief. Further, discovery of emails between the THY Defendants and InsurZoom will demonstrate the agency parameters of the parties' relationship as concerning and pertaining to Plaintiff. Defendants' caselaw does not present a factual circumstance where an unjust enrichment or implied contract claim was not stated on the mere basis that one of the parties used an agent to transact its dealings with the other party, and there is here a genuine issue of fact concerning the agency status of InsurZoom as the THY Defendants' agent that cannot be resolved on a pre-answer motion to dismiss. *See In re Nigeria Charter Flights Cont. Litig.*, 520 F. Supp. 2d 447, 464 (EDNY 2007).

On the other hand, there is no evidence produced by the THY Defendants that Plaintiff held InsurZoom out to the THY Defendants as Plaintiff's agent. The invoices that the THY Defendants said they received from InsurZoom ("InsurZoom Invoices") do not reference NuAxess and are for different amounts than presented in Plaintiff's Invoices. Experience and common-sense dictates that there are agreements and/or emails between InsurZoom and the THY Defendants that would aid in resolving Plaintiff's allegation, upon information and belief, that InsurZoom was the THY Defendants' agent, since it was not Plaintiff's agent. However, the THY Defendants did not

# WOODS LONERGAN PLLC

ATTORNEYS AT LAW

produce related emails when the THY Defendants produced the InsurZoom Invoices, although the InsurZoom Invoices indicate they are ESI received via email or other electronic means.  Prior to commencing this Action, Plaintiff mailed to the THY Defendants at their Empire State Building address a demand letter for payment of the Invoices, which they ignored.

Maria Anjanette ("Nannette") Anasco, a former employee of Plaintiff's agent Rob Rossiter ("Rossiter"), advised Plaintiff prior to commencing this Action that she emailed Plaintiff's Invoices to Anthony Bernato ("Bernato") at InsurZoom.com Brokerage Inc. ("InsurZoom"). Nannette, Rossiter, and Bernato have been disclosed in Plaintiff's initial disclosures in this Action. Plaintiff does not have copies of the emails attaching the Invoices as indicated by Nannette because they are believed to be in the possession, custody or control of Rossiter and/or Rossiter Insurance Agency, Inc., who is no longer Plaintiff's agent and is adverse to Plaintiff.  NuAxess has no reason to believe that InsurZoom was an agent of NuAxess at any time.

If there were any documents whereby NuAxess held out InsurZoom to the THY Defendants as Plaintiff's agent to accept payments owed under the NHP, the THY Defendants would produce them.  The THY Defendants have only produced purported proof of payment of monies to InsurZoom, and in amounts that are entirely different from Plaintiff's Invoices and that do not anywhere reference NuAxess. This cannot conclusively establish the THY Defendants' affirmative defense of payment to Plaintiff for the NHP services.

Plaintiff maintains a list of customer companies, and when a wire or other form of payment comes in, Plaintiff's accounting practices indicates which customer paid and in what amount and links the payment to the customer by invoice reference number, date, amount paid, and other standard accounting practices.  At the time relevant to Plaintiff's NHP services to the THY Defendants, Plaintiff had approximately 40 customer companies, and when their NHP payments came to Plaintiff, same were identified with each company payor.  Plaintiff had approximately 500 company customers last year and not one of them was paying NuAxess through their broker in lieu of NuAxess.  While the THY Defendants may have communicated with NuAxess through the THY Defendants' broker InsurZoom, it is incomprehensible that the THY Defendants would issue payments to Plaintiff as payable to their broker InsurZoom as the payee.  In all contracts with Plaintiff's "referrers," none is authorized to take payment under the NHP as a payee, and Plaintiff has no "brokers" and no contract with Bernado.  The THY Defendants have not stated that InsurZoom was not their agent, and they have failed to provide any documents to NuAxess in the initial voluntary disclosures demonstrating their relationship to Defendant InsurZoom.

While the THY Defendants and InsurZoom possess knowledge of what happened as between themselves and the nature of their relationship which provided a basis for the THY Defendants to purportedly transfer hundreds of thousands of dollars to InsurZoom and payable to InsurZoom as payee, Plaintiff does not have such knowledge, and can only plead on information and belief that InsurZoom was the THY Defendants' agent – since InsurZoom was unequivocally not an agent for Plaintiff and was never authorized to accept payments under the NHP to its own account.

The SAC states sufficient factual allegations to support non-payment claims arising in contract or quasi-contract against the THY Defendants and has added a claim for Monies Had and Received

# WOODS LONERGAN PLLC

ATTORNEYS AT LAW

against InsurZoom to the extent it is also liable to Plaintiff, as the THY Defendants assert that they paid the InsurZoom Invoices in satisfaction of Plaintiff's Invoices. It is only upon Defendants' allegations that Plaintiff's claim against InsurZoom is based, as Plaintiff denies personal knowledge concerning the THY Defendants' affirmative defense of payment.

Plaintiff's claims for non-payment of Plaintiff's Invoices against the THY Defendants cannot be dismissed because the THY Defendants produced documents indicating payment of InsurZoom's Invoices to InsurZoom, where there is not a scintilla of evidence supporting the THY Defendant's bald allegation that Defendant InsurZoom was Plaintiff's agent. Despite multiple attempts to contact InsurZoom, Plaintiff has been unable to, and InsurZoom has not filed an appearance or answered the SAC. Plaintiff consents to the briefing schedule the THY Defendants proposed.

Respectfully submitted,

*Annie E. Causey*
James F. Woods, Esq.
Lawrence Lonergan, Esq.
Annie E. Causey, Esq.